IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CEDRIC D. JOHNSON, #159 980, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:14-CV-182-WHA |
| | ) | [WO] |
| BUTCH CALLOWAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, a state inmate, injured himself while working as a machine operator in a meat processing plant run by the Alabama Department of Corrections. The injury occurred on March 8, 2012. At the time of the incident, Plaintiff was housed at the Elmore Correctional Facility in Elmore, Alabama. He files this 42 U.S.C. § 1983 action against Butch Calloway, Food Processing Superintendent and Danny Donovan and Wesley Sanford, Meat Processing Supervisors.  Plaintiff seeks damages and requests Defendants "fix all machines as required by law." Doc. 1.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 32, 33.  Upon receipt of Defendants' special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 34 at 2. Plaintiff responded to Defendants' report, *see* Doc. 39, but his response does not demonstrate there is any genuine issue of material fact. The court will treat Defendants' report as a motion for summary judgment, and concludes this motion is due to be resolved in favor of Defendants.

# I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI*

*Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II.  THE COMPLAINT

On March 8, 2012, Plaintiff was working at his assigned job with the Alabama Department of Corrections Central Warehouse Meat Processing Division. The sleeve of Plaintiff's coat became entangled on the rotating arms of a meat mixing machine as he was showing another inmate how to clean it causing severe injuries to his right arm. Plaintiff files this § 1983 action alleging Defendants: 1) failed to provide a safe workplace and safe equipment because they did not maintain and/or repair safety guards on the machine Plaintiff was operating at the time of the incident; and 2) failed to train Plaintiff properly on how to operate the meat mixer. Defendants' failures, Plaintiff claims, violated the rules, regulations, and policies of the Department of Corrections' and state and federal laws. Doc. 1.

## III. DISCUSSION

### A.  Statute of Limitations

Defendants move for summary judgment on the ground, among others, that Plaintiff's complaint is barred by the statute of limitations applicable to § 1983 actions. Doc. 33 at 8-9. According to the complaint, the actions about which Plaintiff complains occurred on March 8, 2012. Plaintiff signed his complaint on March 9, 2014, which the court considers the date of filing. *See Houston v. Lack*, 487 U.S. 266, 271-272 (1988) (the law is settled that a *pro se* inmate's complaint is deemed filed the date it is delivered to prison officials for mailing). The Eleventh Circuit has consistently applied Rule 6(a) in computing federal statutes of limitation. *See Am. Canoe Ass'n, Inc. v. City Of Attalla*, 363 F.3d 1085, 1087–88 (11th Cir. 2004) (citing cases). Under Rule 6(a)(1)(A), *Federal Rules of Civil Procedure*, ". . . in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time. . . exclude the day of the event that triggers the period." Under F.R.Civ.P. 6(a)(1)(A), Plaintiff timely filed his complaint. Moreover, because March 9, 2014, fell on Sunday, Plaintiff had until March 10, 2014, to file a timely § 1983 suit. *See* F.R.Civ.P. 6(a)(1)(C).

### B. Res Judicata

Defendants also move for summary judgment on the ground that Plaintiff's complaint is barred by the doctrine of *res judicata*. Doc. 33 at 9-13. To support their argument, Defendants state Plaintiff filed a civil action in the Circuit Court of Montgomery County, Alabama, on April 25, 2012, against Warden Leeposey Daniels and former Commissioner Kim Thomas and several fictitious defendants. *Id.* Exh. I. Similar to the allegations in the instant action, Plaintiff alleged in the state court complaint he had been injured while cleaning a machine in the meat packing plant, that he had not received adequate job training, and that the safety device on the machine he operated had been wrongfully removed. *Id.* The state court granted Defendants Thomas' and

4

Daniels' motion for summary judgment and Plaintiff appealed to the Court of Civil Appeals. *Id.* Because Plaintiff failed to pay the fee for preparation of the clerk's record, the appellate court dismissed the appeal. *Id.*

Under Alabama law, which the court applies because Defendants rely on the decision of an Alabama state court to invoke the doctrine of r*es judicata*, a later action on a previously litigated claim is barred by satisfying four elements: (1) there must have been a prior judgment on the merits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be substantial identity of the parties; and (4) both cases must involve the same causes of action. *Kizzire v. Baptist Health System, Inc*., 441 F.3d 1306, 1308-09 (11th Cir. 2006) (*citing Equity Res. Mgmt. Inc., v. Vinson*, 723 So.2d 634,636 (Ala. 1998)). Without going into an extended discussion of each element of the *res judicata* doctrine, the court finds the record regarding Plaintiff's previously litigated state court action supports a determination there was a prior judgment on the merits, rendered by a court of competent jurisdiction, and that both cases involve the same causes of action. The court, however, cannot conclude that substantial identity of the parties existed.

Plaintiff moved to amend his state court complaint to name, as he does in this case, Messrs. Donovan, Wesley, and Calloway as parties, and he also moved to serve summons on these individuals. The record of the state court proceeding does not reflect that the state court ruled on those motions or that that the aforementioned individuals were ever added as party defendants. Doc. 33, Exh. I at 19-27. The dispositive motion filed in the state court action was submitted by Commissioner Thomas and Warden Daniels. *Id.* at 28-42. These defendants argued for summary judgment on grounds of state immunity and that Plaintiff had not alleged a causal connection between his injury and their actions and/or inactions and that Plaintiff could make no such

connection because they had absolutely nothing to do with the operation of the Warehouse Meat

Processing Division.  *Id.* The state court granted Commissioner Thomas' and Warden Daniels'

dispositive motion concluding they were not causally connected to Plaintiff's claims. *Id.* at 43-44.

Based on the foregoing, the court finds the record fails to indicate an identity of interests

and adequacy of representation sufficient to confer privity status upon the defendants in the instant

complaint and the defendants in the prior state court action. "Under *res judicata* doctrines such as

'virtual representation,' a litigant may be precluded from litigating an issue based on a prior lawsuit

in which, although he was not a party, his interests were represented by a party. This principle

applies, however, only when the respective interests are closely aligned and the party to the prior

litigation adequately represented those interests." *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*,

708 F.2d 582, 587 (11th Cir. 1983) (internal citations omitted); *Jaffree v. Wallace*, 837 F.2d 1461,

1467 (11th Cir. 1988) (citation omitted) (identifying several relevant factors to support the doctrine

of virtual representation, including "participation in the first litigation, apparent consent to be

bound, apparent tactical maneuvering, [and] close relationships between the parties and

nonparties."). While Defendants argue they share a common employer with the defendants named

in the prior state court litigation, *i.e.,* the Alabama Department of Corrections, this alone is an

insufficient basis on which to confer privity based on the record of the state court proceedings.[1]

The court, therefore, cannot conclude that Defendants' respective interests were closely aligned

and adequately represented in the prior state court action to meet the "in privity" element of *res*

---

[1] In addition to Defendants' argument that privity exists because they, like the defendants in the original state court action, are all employees of the Alabama Department of Corrections, Defendants further assert they "were actually named in the previous action, [and thus,] would have had notice of the action." Doc. 33 at 12. As noted, however, there is no evidence that the state court ruled on Plaintiff's motion to amend wherein he sought to name as additional defendants the Defendants named in the instant complaint and/or that they were parties to the prior action. It is, therefore, unclear from the record evidence how Defendants had actual notice of the original action.

*judicata.* Even if privity could be established, the court deems it appropriate under the circumstances to address the merits of Plaintiff's Eighth Amendment claim against Defendants Calloway, Donovan, and Stanford.

## C. Deliberate Indifference

Prison work assignments are "conditions of confinement subject to scrutiny under the Eighth Amendment." *Lee v. Sikes*, 870 F. Supp. 1096, 1099 (S.D. Ga. 1994) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993)); *see also Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) ("Eighth amendment principles apply not only to judicially imposed punishments, but also when conditions of confinement constitute the punishment at issue."). Thus, a plaintiff alleging constitutional violations arising from prison workplace conditions must show a "sufficiently serious" constitutional deprivation and a prison officials' deliberate indifference to Plaintiff's health or safety. *Buckley v. Barbour Cnty.*, 624 F.Supp.2d 1335, 1344 (M .D. Ala. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted)). The Eighth Amendment's prohibition against cruel and unusual punishment forbids knowingly compelling inmates to perform work beyond their strength, dangerous to their lives, or health or unduly painful. *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam); *Williams v. Norris*, 148 F.3d 983, 987 (8th Cir. 1998); *Lee,* 870 F. Supp. at 1100. A correctional official may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828. A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware. … and [that] the official does not 'respond [ ] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014,

1028 (11th Cir. 2001) (en banc) (quoting *Farmer*, 511 U.S. at 844). Thus, in order to survive summary judgment on this claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " Farmer, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious 'harm exists-and the prison official must also "draw that inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff alleges Defendants failed to maintain and/or repair the safety guards on the meat mixer he was operating and acted in bad faith when they "instructed inmate to operate machine with safety guards that had been removed." Plaintiff also contends Defendants failed to train him how to operate the meat mixer and states another inmate instructed him how to operate the equipment. Doc. 1 at 3, 5.

In response to Plaintiff's allegations, Defendant Sanford, Meat Processing Supervisor with the ADOC's Institutional Services Division, states:

> Plaintiff, . . . on the day of his injury was in direct violation of safety rules established by and fully explained to him by the supervisors of ADOC's Meat Processing Plant. All inmate workers who are assigned to operate or clean any machinery used by this operation are educated and trained thoroughly on safety procedures and safe operating procedures for each and every machine.

> Inmate Johnson was assigned to and trained to operate the meat mixer grinder and the conveyors going to and from the mixer grinder.

> In our operation[,] inmates who operate the machinery rotate shifts on a day-to-day basis. We normally operate in two or three shifts daily for machine operators. The operator working first shift one day will work second shift the next work day. The clean-up job on this particular machine is normally the responsibility of the second

shift operator which was the case the day the accident occurred. Inmate Johnson worked first shift on that day, the second shift operator was charged with cleaning duties of the machine. As the second shift operator was in the process of cleaning this machine, Inmate Johnson went back into the processing area and proceeded to show the man in his words a "faster and easier way to clean the machine." Not only did Inmate Johnson not cut off the main breaker to the power of the machine (a strict safety violation), he also turned the machine on so as to make the process of cleaning it "easier and faster." Both incidents were safety violations and contrary to rules of his safety training. The on/off switch was working properly that day. The inmate originally in charge of cleaning the machine immediately turned off the power when Inmate Johnson stuck his arm into the machine (another safety violation). If not for the power switch button operating properly and quick response of the inmate responsible in cleaning the machine, Inmate Johnson's injuries could've been much more severe. Injuries Inmate Johnson did sustain had nothing to do with faulty machinery but his own decision to violate safety rules in order to save time.

Doc. 33, Exh. C – Sanford Affidavit.

Defendant Donovan, Meat Processing Supervisor with the ADOC's Institutional Services

Division, affirms he showed Plaintiff how to operate both the meat mixer grinder and the

conveyors.  Defendant Donovan states:

Plaintiff, . . . on the day of his injury[,] was in direct violation of safety rules established by and fully explained to him by the supervisors of ADOC's Meat Processing Plant. All inmate workers who are assigned to operate or clean any machinery used by this operation are educated and trained thoroughly on safety procedures and safe operating procedures for each and every machine.

Inmate Johnson was assigned to and trained to operate the meat mixer grinder and the conveyors going to and from the mixer grinder. … Inmate Johnson was also shown where the main cut off breaker to the machine was located, and was specifically told to shut off the machine before cleaning it.

The top of the machines do not have a railing and railings have never been used. Proper operation attire for the workers consists of meat smocks and latex gloves, which are to be used by the line workers for sanitation purposes. Rubber gloves are not used by the machine operators, and are not required under the worker regulation. Freezer suits are to be utilized by inmate workers that work inside the freezer for insulation purposes. Inmate Johnson was not assigned to work in the freezer, and, therefore, did not need a freezer suit. In our operation, inmates who operate the machinery rotate shifts on a day-to-day basis. We normally operate in two or three shifts daily for machine operators. The operator working first shift one day will work second shift the next work day.

The clean-up job on this particular machine is normally the responsibility of the second shift operator which was the case the day the accident occurred. Inmate Johnson worked first shift on that day, the second shift operator was charged with cleaning duties of the machine. As the second shift operator was in the process of cleaning this machine, Inmate Johnson went back into the processing area and proceeded to show the man in his words a "faster and easier way to clean the machine." …

Not only did Inmate Johnson not cut off the main breaker to the power of the machine (a strict safety violation), he also turned the machine on so as to make the process of cleaning it "easier and faster." Both incidents were safety violations and contrary to rules of his safety training. The on/off switch was working properly that day. …

Doc. 33, Exh. D – Donovan Affidavit.

Plaintiff maintains that; 1) there was no supervisor actually supervising him at the time of March 8, 2012, incident which would have prevented the injury from occurring, 2) no safety precautions or measures were taken to make the meat mixer grinder "injury free" in the absence of a supervisor supervising operations in the meat processing warehouse, and 3) Defendants, as supervisors, had the task of supervising for the sake of safety in preventing accidents and injuries, and thus, were subjectively aware of the risk of harm to him. Doc. 39. Plaintiff's arguments fail, however, to demonstrate Defendants knew of and disregarded the risk that actually caused his injury. Plaintiff does not dispute Defendants' evidence that at the time of the incident he was operating the meat mixer grinder in direct violation of safety rules established by and fully explained to him by the supervisors at the meat processing plant. There is also no dispute that no guard rails had been removed from the top of machine Plaintiff was operating at the time of the incident because there were none nor had there ever been. Moreover, Plaintiff's conclusory

assertion he did not receive proper training regarding operation of the meat mixer grinder is not supported by the record.[2] *See* Doc. 33, Exh. B at 1; Exh. C at 1-3; Exh. D at 1-3.

While the incident about which Plaintiff complains was unfortunate, he has come forward with no significantly probative evidence which demonstrates that, under the facts and circumstances of this case, Defendants exhibited deliberate indifference to his health and safety regarding how he operated the meat mixer grinder when the accident which injured his arm occurred. *See Farmer,* 511 U.S. 825; *see also Warren v. State of Missouri,* 995 F.2d 130, 131 (8th Cir. 1993) (failure to provide safety equipment on saw, even with knowledge of prior accidents, not deliberate indifference); *Bibbs v. Armontrout,* 943 F.2d 26, 27 (8th Cir. 1991) (failure to repair safety guards negligence only); *Franklin v. Kansas Dept. Of Corrections*, 160 Fed. Appx. 730, 736 (10th Cir. 2005) (failure to instruct inmate on proper lifting techniques not deliberate indifference). To the extent Plaintiff's claim is based on Defendants' alleged negligence for allowing him to work under conditions in which his accident was possible, this claim entitles him to no relief. The Constitution is not implicated by negligent acts of officials. *Daniels v. Williams*, 474 U.S. 327333-36 (1986); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (mere negligence does not violate the Eighth Amendment).

Plaintiff has simply offered no facts from which the conclusion may be drawn that Defendants exhibited deliberate indifference to his safety. That Plaintiff suffered an injury because of the March 8, 2012, incident, standing alone, is insufficient to demonstrate deliberate indifference by Defendants. The burden is on the party opposing summary judgment to submit

---

[2] Plaintiff admits he signed a "contract" indicating he received training and safety instructions on how to operate meat processing equipment but claims to have done so because he was "coerced]. . . under duress and without full disclosure." Doc. 39 at 2. Plaintiff's conclusory assertion in this regard, however, does not negate Defendants' evidence which reflects he received education and training on the safety procedures and safe operating procedures of the machines at the meat processing warehouse. *See* Doc. 33, Exh. C at 3.

affirmative evidence demonstrating there exists a genuine dispute of material fact regarding an essential element of the claim. *Celotex*, 477 U.S. at 322. Plaintiff must go beyond the pleadings and "designate 'specific facts' showing that there is a genuine issue for trial." *Id*. at 324. Here, Plaintiff has failed to establish a genuine dispute regarding deliberate indifference by Defendants. The court, therefore, concludes their motion for summary judgment on Plaintiff's Eighth Amendment claim is due to be granted.

**D. Violation of Agency Regulations**

Plaintiff alleges that Defendants violated administrative rules and/or regulations regarding the training he received to operate the meat mixer grinder, but he does not identify or describe the rule or regulation with any particularity. See Doc. 1 at 3, 5. Infringements of agency rules, regulations, or procedures do not, standing alone, amount to constitutional violations. *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegations of a violation of statutory or administrative provisions do not provide the basis for a claim of violation of a constitutional right); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting that the mere fact a governmental agency's regulations or procedures may have been violated does not, alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that a claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *see also United States v. Caceres*, 440 U.S. 741, 751-752 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley*, 316 Fed. App'x 300, 303 (4th Cir. 2009) (same); *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that, if state law grants more procedural rights than the Constitution requires, a state's failure to abide by its law is not a federal violation). As discussed above, the court finds that Defendants did not act with deliberate indifference to

Plaintiff's safety—even if the court were to assume they did not follow some unidentified rule or regulation. Because this claim provides Plaintiff no basis for relief, Defendants are entitled to summary judgment.

**E. State Law Claim**

Plaintiff contends Defendants acted or failed to act in accordance with state laws governing training of inmates to operate meat processing machines and/or to maintain those machines. To the extent Plaintiff asserts the actions of Defendants violated state law, review of these claims is appropriate only upon  this court's exercise of supplemental jurisdiction.  In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper and Son v. Wheelabrator Frye, Inc*., 735 F.2d 414, 427 (11th Cir. 1984) (internal quotation marks and citations omitted).  Exercising supplemental jurisdiction is discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d at 428.  Because of this court's resolution of the federal claims in the complaint, Plaintiff's pendent state claims are due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### IV. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motions for summary judgment (Doc. 33) be GRANTED;

2. Plaintiff's pendent state law claims be DISMISSED without prejudice;

3. This case be DISMISSED with prejudice;

4. Judgment be ENTERED in favor of Defendants.

 It is further

ORDERED that **on or before February 17, 2017**, the parties may file an objection to the Recommendation. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 3rd day of February 2017.


 /s/Terry F. Moorer
 TERRY F. MOORER
 UNITED STATES MAGISTRATE JUDGE